# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RED EAGLE LAW, L.C.<br>5256 S. Mission Road, Suite 135<br>Bonsall, CA 92003<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE<br><br>The Executive Office<br>Office of the Legal Advisor<br>Suite 5.600, 600 19th St NW<br>Washington, DC 20522<br><br>*Defendant.* | Civil Action No. 1:25-cv-722<br><br><br><br>**COMPLAINT: VIOLATION OF THE FREEDOM OF INFORMATION ACT (FOIA)** |

## INTRODUCTION

Plaintiff, RED EAGLE LAW, L.C. ("RED EAGLE LAW" or "Plaintiff") alleges as follows:

1. This is an action under the Freedom of Information Act, 5. U.S.C. § 552 *et. seq.* ("FOIA"), to obtain an order for the production of an agency record from the United States Department of State, Office of Information Programs and Services in response to a request properly made by Plaintiff related to the implementation of the January 20, 2021, Presidential Proclamation 10141 "Ending Discriminatory Bans on Entry to the United States."

## JURISDICTION & VENUE

1. This court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) (FOIA) and 28 U.S.C. § 1331 (federal question).

2. This Court has jurisdiction to grant declaratory, injunctive, and further necessary or proper relief pursuant to 5 U.S.C. § 552(a)(4)(B), 28 U.S.C. §§ 2201-2202, and Federal Rules of Civil Procedure 57 and 65.

3. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

4. Plaintiff RED EAGLE LAW, L.C. is an immigration law firm in the United States.

5. Defendant United States Department of State ("DOS") is an agency within the meaning of FOIA. *See* 5 U.S.C. § 552(f). It does not fall under any exception to the statutory definition of an agency within the meaning of FOIA. *See* 5 U.S.C. § 551(1). The Department of State Office of Information Programs & Services has custody and control of the specific agency records requested by Plaintiff pursuant to FOIA. *See* 22 C.F.R. §171.2. [1]

6. FOIA requires that agencies respond to FOIA requests within 20 business days. *See* 5 U.S.C. § 552(a)(6)(A).

7. Defendant United States Department of State has failed to meet the statutory deadlines set by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)-(B). Plaintiff is therefore deemed to have exhausted all administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C).

## FACTUAL ALLEGATIONS

---

[1] *See also* U.S. Department of State, Freedom of Information Act, which states, "The Department of State maintains records dealing with: Formulation and execution of U.S. Foreign Policy; **Administration and operations of the Department of State and U.S. Missions abroad**; Consular assistance given to U.S. Citizens abroad; In general, permanent records 25 years and older, pre-1925 passport and pre-1940 visa records are property of National Archives and Records Administration (NARA); **Current and former employees of the Department of State**; Applications from U.S. Citizens for U.S. Passports; **Visa requests from non-citizens to enter the U.S.**," https://foia.state.gov/Request/FOIA.aspx (last accessed Mar. 1, 2025) (emphasis added).

8. On September 5, 2023, Plaintiff submitted a FOIA request which was assigned case number **F-2023-12770**.

9. The information Plaintiff requested in this FOIA relates to extensive backlogs on Iranian immigrant visa interviews and adjudications caused in part by policies implemented by President Trump's Executive Order 13780, and Proclamations 9645, 9723, and 9983 (collectively "the Muslim ban").

10. On March 6, 2017, former President Donald Trump signed Executive Order 13780, entitled "Protecting the Nation from Foreign Terrorist Entry into the United States," which placed limits on travel to the U.S. by nationals of several countries including Iranian nationals. *See* 82 Fed. Reg. 13209 (Mar. 9, 2017)

11. The EO also instructed the Secretary of Homeland Security to "identify whether, and if so what, additional information will be needed from each foreign country to adjudicate an application by a national of that country for a visa, admission, or other benefit under the INA (adjudications) in order to determine that the individual is not a security or public-safety threat." *Id.*

12. In conjunction with EO 13780, the former President issued "Memorandum of March 6, 2017" ordering the implementation of Executive Order 13780.

13. The Memorandum of March 6, 2017 required "[t]he Secretary of State and the Secretary of Homeland Security, in consultation with the Attorney General, [to] implement protocols and procedures [to] enhance the screening and vetting of applications for visas and all other immigration benefits, so as to increase the safety and security of the American people." *See* 82 Fed. Reg. 16279 (Apr. 3, 2017)

14. On May 4, 2017, the Department of State proposed a new form, Form DS-5535, to collect additional information from all visa applicants "who have been determined to warrant additional scrutiny in connection with terrorism or other national security-related visa ineligibilities." *See* 82 Fed. Reg. 20956 (May 4, 2017)

15. The new form executed the directive of Executive Order 13780 to implement additional protocols and procedures which purportedly focused on "[ensuring] the proper collection of all information necessary to rigorously evaluate all grounds of inadmissibility or deportability, or grounds for the denial of other immigration benefits." *Id.*

16. Specifically, "[t]his information collection implements the directive of the President, in the Memorandum for the Secretary of State, the Attorney General, the Secretary of Homeland Security of March 6, 2017." *Id.*

17. The DS-5535 has resulted in delays and extensive backlogs on Iranian immigrant visa interviews and adjudications.

18. On January 20, 2021, former President Joseph R. Biden issued Presidential Proclamation 10141 ("PP10141") titled, "Proclamation on Ending Discriminatory Bans on Entry to The United States." *See* 86 Fed. Reg. 7005 (Jan. 25, 2021)

19. Upon its' issuance, PP10141 immediately revoked Executive Order 13780, and Proclamations 9645, 9723, and 9983. The January 20th Proclamation eliminated the PP9645 restrictions on the issuance of visas and entry of Iranian nationals to the United States, thereby eliminating the need for the waiver created in Section 3(c) of the revoked Proclamation.

20. Moreover, the revocation of PP9645 and Executive Order 13780 implicated the extinction of the DS-5535, as it was created solely for the purpose of executing the directive of Executive Order 13780, which is no longer in effect.

21. Despite the revocation, the policies created by the Muslim ban are still actively in place and being used including form DS-5535 and the enhanced screening and vetting process.

22. In addition, PP10141 required that "within 120 days of the date of the proclamation (by May 25, 2021), the Secretary of State and the Secretary of Homeland Security, in consultation with the Director of National Intelligence, shall provide to the President a report consisting of the following elements: (a) A description of the current screening and vetting procedures for those seeking immigrant and nonimmigrant entry to the United States. This should include information about any procedures put in place as a result of any of the Executive Order and Proclamations revoked in section 1 of this proclamation and should also include an evaluation of the usefulness of form DS-5535."

23. Family reunification has been a key principle underlying U.S. immigration policy since 1965. *See generally The Immigration and Nationality Act Amendments of 1965* (Pub. L. 89-236). It remains a cornerstone of the INA today.

24. Congress built on this cornerstone The Immigration Act of 1990, now known as the INA. Pub. L. 101-649 Among Congress's chief goals was reunifying families. *See, e.g., Solis-Espinoza v. Gonzales,* 401 F.3d 1090, 1094 (9th Cir. 2005).

25. Per the INA, the Administrative Procedure Act ("APA"), and relevant regulations and policies, the U.S. Department of State has a mandatory duty to adjudicate immigrant visa applications within a reasonable time. *See Mohamed v. Pompeo,* No. 1:19-cv-01345-LJO-SKO, 2019 U.S. Dist. LEXIS 167266 (E.D. Cal. Sep. 27, 2019) (issuing a mandatory injunction ordering the State Department to complete adjudications of immigrant visa applications); 5 U.S.C § 555(b) (requiring agencies to, "within a reasonable time ... conclude the matter presented to it");

*Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry ("Nine Iraqi Allies")*, 168 F. Supp. 3d 268, 293 n. 22, 295–96 (D.D.C. 2016).

26. While 22 U.S.C. § 2651(a) grants the Secretary some discretion to carry out the INA abroad, that discretion is not without limits.

27. 22 U.S.C. § 2651(a)(1) states that the Department of State "must" administer "in accordance with [the INA], the provisions of which govern the allotment of immigrant visas, setting a "finely reticulated regulatory scheme governing the admission of foreign nationals." *See Hawaii v. Trump*, 878 F.3d 662, 685 (9th Cir. 2017); *cf. Arizona v. United States*, 567 U.S. 387, 395 (2012).

28. There is also a "strong presumption that Congress intends judicial review of administrative action" that can be overcome only by "clear and convincing evidence that Congress intended" such action to be unreviewable. *See Am. Hosp. Ass'n v. Azar*, 967 F.3d 818, 823-24 (D.C. Cir. 2020)(internal quotations omitted). *See also Dep't of Com. v. New York*, 139 S. Ct. 2551, 2568 (2019) (holding that exceptions to judicial review are interpreted "quite narrowly" and are generally limited to categories of decisions that are "traditionally" left to agency discretion.)

29. The Department of State's conduct undermines a foundational principle of the INA by separating U.S. citizens from their spouses indefinitely.

30. The Department of State's lack of communication and clarity regarding the DS-5535 has left U.S. citizens, Iranian national spouses, and their attorneys and advocates with limited information to understand the source of the delay.

31. While some of the aggrieved families have access to counsel, many do not.

32. According to the U.S. Department of State's Travel Advisory system, many Iranian national spouses caught in the visa backlog live in areas where routine travel and daily life are dangerous.

33. The United States Department of State provides travel advisories to all U.S. citizens who will be visiting foreign countries.

34. Travel to Iran has been rated by the U.S. Department of State as **"Iran – Level 4: Do Not Travel."** This is the highest travel advisory level. The advisory also warns:

> "Do not travel to Iran due to the risk of **terrorism, civil unrest, kidnapping** and the **arbitrary arrest of U.S. citizens**. Exercise increased caution due to **wrongful detentions**.
> …
>
> **Country Summary:** U.S. citizens should not travel to Iran for any reason. U.S. citizens visiting or residing in Iran have been kidnapped, arrested, and detained on spurious charges.
>
> Iranian authorities continue to unjustly detain and imprison U.S. nationals, particularly dual national U.S.-Iranian nationals--including students, journalists, business travelers, and academics--on charges including espionage and posing a threat to national security. Iranian authorities routinely delay consular access to detained U.S. nationals and consistently deny consular access to dual U.S.-Iranian nationals.
>
> Violent extremist groups, including U.S. government-designated terrorist organizations, operate in Iran. ISIS and affiliated groups have claimed responsibility for bombings and other attacks in Iran. The threat of terrorist activity persists, as does the risk of death or injury to bystanders.
> The U.S. government does not have diplomatic or consular relations with the Islamic Republic of Iran. The U.S. government is unable to provide routine or emergency consular services to U.S. citizens in Iran."

*See* Iran Travel Advisory (January 11, 2024), U.S. Dept. of State. https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/iran-travel-advisory.html (emphasis in original).

35. The Department of State's lack of urgency and transparency in addressing the Visa backlog shows a complete and utter disregard for the safety and family unity of U.S. citizens and their Iranian national spouses.

36. Visa applicants and their U.S. citizen spouses simply want the information they need to make informed decisions and move on with their lives.

37. As it stands today, they are forced to live in limbo, turning down professional opportunities and postponing family planning because they have no way of knowing how much longer they will be separated. Their dreams are indefinitely deferred, which takes a profound psychological toll on individuals and families.

38. Even if some delays are unavoidable, foreign nationals and their families would be in a much better position to manage their lives and expectations if the government gave them the information that they need to make informed decisions.

39. Further, a reasonable amount of transparency would likely save the U.S. government and their contractors valuable time and resources, which is otherwise spent responding to swaths of case status inquiry emails, expedited requests, and lawsuits.

40. Considering the time sensitivity and humanitarian concerns, Plaintiff filed their FOIA request which was confirmed to be received by Defendant on September 6, 2023. **Exhibit A**, *Response to Electronic FOIA Request*.

41. In this request Plaintiff sought

- A copy of section (a) of the report ordered by PP1401 which includes a "description of the current screening and vetting procedures for those seeking immigrant and nonimmigrant entry to the United States. This should include information about any procedures put in place as a result of any of the Executive Order and Proclamations revoked in section 1 of this proclamation and should also include an evaluation of the usefulness of form DS-5535."

- any emails between the State Department and government contractors including General Dynamics and Quality Support, Inc. about the contents of the above-referenced report that reference the keywords "DS-5535" or "DS5535"

42. Through Defendant's Public Access Link (PAL) portal, Plaintiff was informed their estimated delivery date is October 19, 2023. **Exhibit B**, *PAL FOIA Check Status Page*.

43. Defendant has not provided Plaintiff with any additional updates or estimated timeline for completion.

44. It has now been over **1 year and 6 months** since Defendant received the FOIA request, and is **510 days** past their estimated time of delivery.

45. Under FOIA, Defendant had twenty days to respond to Plaintiff's request. Despite the statutory timeline, the significant public interest of this request, and the collateral consequences of the U.S. government's failure to timely issue these immigrant visas for immediate relatives of U.S. citizens living in conflict zones, Defendant has yet to provide a response.

46. Plaintiff now files this suit to order Defendant to undertake an adequate search and produce responsive records without delay. In so doing, Plaintiff intends to use this information for to provide the public clarity regarding the growing visa backlog and its relationship with the continuing implementation of the Muslim Ban, as well as the interplay of any directives that do not align with the INA or express intent of Congress. The plaintiff's goal is to promote transparency and accountability.

## **CLAIM FOR RELIEF**

**Violation of FOIA**
**(Failure to Provide Timely Response to FOIA Request)**

47. Plaintiff repeats, realleges, and reincorporates the allegations in the foregoing paragraphs as though fully set forth herein.

48. Defendant is an agency subject to FOIA. Therefore, it is obligated to "promptly" release, in response to a FOIA request, any disclosable records in its possession at the time of the request. *See* 5 U.S.C. § 552(a)(3).

49. Defendant is permitted to withhold record or parts of records only if one of the enumerated FOIA exemptions apply. Defendant must provide a lawful reason for withholding any other materials as to which it is claiming an exemption. *See* 5 U.S.C. § 552(b).

50. No exemptions permit the withholding of the record sought by the Request.

51. FOIA requires that agencies respond to FOIA requests within 20 business days. *See* 5 U.S.C. § 552(a)(6)(A).

52. Under 5 U.S.C. § 552(a)(6)(A)(i), Defendant must decide within 20 days of a request whether the agency will produce responsive documents.

53. An extension of this timeline is permitted only "[i]n unusual circumstances" where the agency provides "written notice." Such notices allow the agency to extend the response deadline for ten additional working days. 5 U.S.C. § 552(a)(6)(B)(i): *see also, e.g., Hajro v. U.S. Citizenship & Immigration Servs.*, 881 F. 3d 1086, 1092 (9th Cir. 2016) ("The statutory time limits require an agency to determine within twenty days whether to comply with a FOIA request or, in the alternative, notify the requester of any 'unusual circumstances' requiring an extension in responding to the request.").

54. In this case, over 374 business days have elapsed without a substantive reply or update from Defendant.

55. Defendant failed to demonstrate why Plaintiff's request for electronic records from a government agency that routinely operates internationally in the year 2025 is unusual. Defendant also fails to demonstrate that their delay is permissible or lawful.

56. Defendant United States Department of State has failed to meet the statutory deadlines set by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)-(B). Plaintiffs are therefore deemed to have exhausted all administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C).

57. Therefore, Plaintiff is entitled to an order compelling Defendant to produce the record responsive to the Request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grants the following relief:

a. Assume jurisdiction over this matter;

b. Declare that the record sought by the Request, as described in the foregoing paragraphs, is public under 5. U.S.C. § 552 and must be disclosed;

c. Order Defendant to undertake an adequate search for the requested record and provide all responsive records and corresponding documents to Plaintiff's FOIA request within 20 business days of the Court's order;

d. Award Plaintiff attorney's fees and costs, as expressly permitted by FOIA under 5 U.S.C. § 552(a)(4)(E) and on any other basis justified under the law; and

e. Grant any other or further relief that this Court deems just and proper.

Dated: March 12, 2025                                   Respectfully submitted,

*/s/ Curtis Lee Morrison*
Curtis Lee Morrison (1631896)
**RED EAGLE LAW, L.C.**
5256 S. Mission Road,
Suite 135
Bonsall, CA 92003
curtis@redeaglelaw.com
Phone: 714-661-3446
*Attorney for Plaintiff*